# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| ROLAND G. LOVERN, JR., ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11CV00016 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | By: James P. Jones |
| COMMISSIONER OF SOCIAL ) | United States District Judge |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

*Pamela A. Counts, Lee & Phipps, PC, Wise, Virginia, for Plaintiff. Eric P. Kressman, Regional Chief Counsel, Region III, Margaret Maguire, Assistant Regional Counsel, Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Roland G. Lovern, Jr. filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Lovern filed for benefits on July 3, 2008, alleging that he became disabled on April 30, 2008. His claim was denied initially and upon reconsideration. Lovern received a hearing before an administrative law judge ("ALJ"), during which Lovern, represented by counsel, and a vocational expert testified. The ALJ denied Lovern's claim, and the Social Security Administration Appeals Council denied his Request for Reconsideration. Lovern then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Lovern was born on January 2, 1978, making him a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2011). Lovern has a high school education[1] and has worked in the past as a bag boy, meat cutter, communications cable worker, and product support specialist. He originally claimed he was disabled due to anxiety, spinal surgery, degenerative disc disease, and a back injury.

Lovern has a history of degenerative disc disease. In July 2000, a CT scan of the lumbar spine revealed narrowing of the lumbar spinal canal, disc extrusion

---

[1] Lovern also completed one year of college.

at L5-S1, S1 nerve root compression, and moderate disc protrusion at L4-5 with no definitive L5 nerve root compression. In August 2000, Lovern underwent complete bilateral L4 and L5 and partial S1 laminectomies and medial facetectomies, with additional resection of the left L5-S1 herniated nucleus pulposus. Following surgery, Lovern completed physical therapy at Wellmont Rehabilitation and Sports Clinic. In September 2000, Bill Collie, PT, reported that Lovern was progressing "extremely well" and had no lower extremity pain or numbness. (R. at 287.)

In June 2006, Lovern sought treatment from David Nauss, M.D., for complaints of increased low back pain. Dr. Nauss diagnosed chronic low back pain, anxiety, and morbid obesity. He performed a caudal epidural steroid injection.

Lovern sought treatment from Patricia Vanover, M.D., from September 2006 through October 2009 for complaints of chronic low back pain. Physical examinations consistently revealed marked tenderness in the lumbosacral area with decreased range of motion. Dr. Vanover diagnosed Lovern with chronic low back pain secondary to degenerative disc disease, hypertension, chronic anxiety, and insomnia. She prescribed Lortab, Xanax, and Ambien. Dr. Vanover repeatedly noted that Lovern was able to perform activities of daily living "without undue difficulty" while on medication. (R. at 242, 244, 332.)

During the majority of his treatment with Dr. Vanover, Lovern indicated that as long as he took his medication, he was able to function normally and work without difficulty. (R. at 238-39, 335, 338.) However, in July 2008, a few weeks after he applied for disability, Lovern reported that he could not do his job because of the severity of his pain. (R. at 334.)

In September 2008, Joseph I. Leizer, Ph.D., a state agency psychologist, reviewed Lovern's medical records. Dr. Leizer reported that Lovern had anxiety disorder, but that his mental impairment was not severe. Dr. Leizer noted that Lovern's anxiety did not cause any restrictions in his daily activities.

Richard Surrusco, M.D., a state agency physician, reviewed Lovern's medical records to assess his physical residual functional capacity in September 2008. He opined that Lovern was capable of performing a range of light work.

In June 2009, Dr. Vanover completed forms regarding Lovern's ability to perform physical and mental work-related activities. She indicated that Lovern could only stand or sit two hours in an eight-hour workday. She also reported that Lovern would have some marked limitations in his mental work abilities. Dr. Vanover did not identify any medical findings to support her assessment.

Dr. Vanover ordered a diagnostic imaging study of Lovern's low back in July 2009. The study showed normal alignment of the vertebra, some mild

narrowing at the L4-L5 disc, and minimal change at the L3-L4 disc. There was no acute abnormality.

In September 2009, B. Wayne Lanthorn, Ph.D., completed a psychological evaluation of Lovern at the request of his attorney. Lovern stated that he watched television, read, and enjoyed using the computer to play games. He indicated that his wife did most of the laundry, cooking, and cleaning, but that he went with her to the grocery store and tried to help out when he could around the house. Upon examination, Dr. Lanthorn reported that Lovern was somewhat depressed and pessimistic about his future, but that he displayed no signs of ongoing psychotic processes or delusional thinking. Dr. Lanthorn noted that Lovern had never received any formal psychiatric or psychotherapeutic intervention. (R. at 371.) He diagnosed Lovern with chronic pain disorder associated with psychological factors and general medical conditions, mood disorder, and alcohol abuse in sustained full remission. Dr. Lanthorn assessed a GAF score of 55.[2]

On a separate assessment form, Dr. Lanthorn found that Lovern had unlimited ability to understand, remember, and carry out simple job instructions,

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

and good ability to follow work rules, relate to co-workers, maintain concentration, and carry out detailed but not complex job instructions.

On September 23, 2009, two days after Dr. Lanthorn's evaluation, Lovern sought treatment from D. Kaye Weitzman, a licensed clinical social worker, for complaints of depression. Weitzman assessed a GAF score of 40. Weitzman also completed a form regarding Lovern's ability to perform mental work-related activities. She indicated that Lovern had only mild or moderate limitations in his mental work-related activities.

At the administrative hearing held in September 2009, Lovern testified on his own behalf. Lovern stated that he was able to complete many daily activities such as watch television, care for his personal needs, occasionally mow the yard, drive, run errands, and shop in stores. Lovern confirmed that he had never pursued in-patient psychiatric treatment. A vocational expert also testified. He classified Lovern's past work as a bag boy as medium, unskilled; his past work as a communications cable worker as heavy, skilled; his past work as a meat cutter as heavy, skilled; and his past work as a product support specialist as sedentary, skilled.

After reviewing all of Lovern's records and taking into consideration the testimony at the hearing, the ALJ determined that he had severe impairments of

-6-

Case 2:11-cv-00016-JPJ-PMS   Document 18   Filed 02/21/12   Page 6 of 12   Pageid#: 451

degenerative disc disease and depression/anxiety, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Lovern's limitations, the ALJ determined that Lovern retained the residual functional capacity to perform a range of sedentary work that allowed him to sit or stand alternately, at will, provided he remained on task while in either position. However, the ALJ stated that Lovern could only occasionally climb, balance, stoop, kneel, crouch, or crawl. He was limited to simple, routine, and repetitive tasks, with only occasional interactions with the public or co-workers. The vocational expert testified that someone with Lovern's residual functional capacity could work as a small parts assembler or a parts polisher. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Lovern was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Lovern argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly determined Lovern's residual functional capacity and failed to give appropriate weight to his complaints of pain. For the reasons below, I disagree.

## III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Lovern argues that the ALJ's determination is not supported by substantial evidence. First, Lovern asserts that the ALJ improperly determined his residual functional capacity by giving too little weight to the opinions of Dr. Vanover, Dr. Lanthorn, and Weitzman.

In weighing medical opinions, the ALJ must consider factors such as the examining relationship, the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record. 20 C.F.R. § 404.1527(d) (2011). Although treatment relationship is a significant factor, the

ALJ is entitled to afford a treating source opinion "significantly less weight" where it is not supported by the record. *Craig*, 76 F.3d at 590.

In the present case, the ALJ considered the opinion of Dr. Vanover, but gave little weight to her assessment, for several reasons. Although Dr. Vanover was Lovern's treating physician, her assessment is not well-supported by the other evidence of record and is contrary to her own treatment notes. For example, Dr. Vanover indicated on a check-the-box form that Lovern could only stand or sit two hours in an eight-hour workday, even though she listed no medical findings to support this conclusion and repeatedly noted that Lovern was able to perform activities of daily living "without undue difficulty" while on medication. (R. at 242, 244, 332.) Dr. Vanover's opinion is also inconsistent with Lovern's routine statements that as long as he took his medication, he was able to function normally and work without difficulty.[3] (R. at 238-39, 335, 338.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

With respect to Dr. Lanthorn and Weitzman, the ALJ's evaluation of their opinions is also supported by substantial evidence. First, Dr. Lanthorn and Weitzman's relationships with Lovern were limited — Dr. Lanthorn's opinion is

---

[3] A few weeks after he applied for disability in July 2008, Lovern made one report to Dr. Vanover that he could not do his job because of the severity of his pain. (R. at 334.) However, this was inconsistent with several earlier statements made over the course of his treatment.

-10-

Case 2:11-cv-00016-JPJ-PMS   Document 18   Filed 02/21/12   Page 10 of 12   Pageid#: 455

based on a one-time examination, made at the request of Lovern's attorney, and Weitzman's opinion is based on her observations during one intake session. Second, the opinions of these providers are inconsistent with their own mental status evaluations as well as the other medical evidence of record. For instance, Dr. Lanthorn indicated that Lovern had marked difficulties with anxiety; however, he found that Lovern had good ability to relate to co-workers and assigned him a GAF score of 55, indicating only moderate symptoms or limitations. (R. at 376, 378.) On the other hand, Weitzman assigned Lovern a GAF score of 40, indicating very serious impairment in occupational functioning, yet she also found that Lovern had only mild or moderate limitations in his mental work-related activities. (R. at 381-82.) Furthermore, the medical evidence demonstrates that Lovern never required any formal psychiatric or psychotherapeutic intervention.

Finally, Lovern argues that the ALJ improperly discounted his credibility when evaluating his complaints of pain. This argument is without merit. The ALJ's assessment is consistent with the record, which shows that the medical evidence was inconsistent with the degree of pain self-reported by Lovern. Lovern's treating source, Dr. Vanover, noted improvement in Lovern's social and occupational functioning while he was taking medication. (R. at 242, 244, 332.) Lovern's daily living activities, such as caring for his personal needs, occasionally mowing the yard, driving, running errands, and shopping in stores, further

-11-

Case 2:11-cv-00016-JPJ-PMS Document 18 Filed 02/21/12 Page 11 of 12 Pageid#: 456

contradict his claims of chronic pain. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). Given this evidence, as well as the "great weight" afforded credibility determinations by the ALJ, *see Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984), I agree with the ALJ's assessment as to Lovern's credibility.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 21, 2012

/s/ James P. Jones
United States District Judge